IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HENRY CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. |
| v. | ) | |
| | ) | |
| HOUSING AUTHORITY OF | ) | |
| DEKALB COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiff, pursuant to Rule 65, Fed. R. Civ. P. moves for a preliminary injunction whereby this Court will order Defendant to reinstate forthwith Plaintiff's Section 8 Voucher for a federal rent subsidy.

Defendant terminated Plaintiff's Section 8 Voucher to which he is entitled under 42 U.S.C. § 1437f and has, thereby, stopped Plaintiff's entitlement to rent subsidy on and after March 31, 2014. Plaintiff received a federal rent subsidy since 2003 under the Section 8 Program operated by the Housing Authority of DeKalb County (HADC). Defendant incorrectly

1

determined that Plaintiff violated his family obligations as a participant in the Section 8 program based on Plaintiff's arrest on October 31, 2013. Plaintiff is unable to pay his $699 monthly rent, which was due April 1, 2014. Without the rent subsidy, Plaintiff is in danger of becoming homeless. The danger will continue unless Defendant immediately reinstates Plaintiff's $699 monthly Section 8 rent subsidy so Plaintiff's rent will be paid.

Plaintiff has moved for a preliminary injunction to effect restoration to the *status quo* as it existed prior to Defendant's March 31, 2014 cancellation of Plaintiff's Section 8 Voucher.

## **THE NATURE OF THIS CASE**

This case concerns Plaintiff's continued entitlement to a Section 8 Voucher issued by the Section 8 Voucher Program of the HADC.

The Section 8 Voucher Program is a federal rent subsidy program established by 42 U.S.C. § 1437f.   Under this program, the U.S. Department of Housing and Urban Development (HUD). authorizes public housing agencies (PHA's), such as the HADC's Section 8 Voucher Program, to issue a fixed number of Section 8 Vouchers and provides funds to the PHA for this and other aspects of the administration of the program.

2

The PHA then issues Vouchers to eligible families. After a family locates a suitable dwelling owned by a private landlord, the PHA pays the landlord for that part of the family's rent and utilities which exceeds 30% of the family's net income.

After the PHA issues a Voucher, the PHA conducts an annual review to reconfirm eligibility and recalculate the amount of the rent subsidy. The obligations of the participant family to maintain the family's Voucher are described in 24 C.F.R. § 982.551 and the obligation of the family to not engage in criminal activity is described in § 982.551(l). The PHA may terminate the Voucher because of the family's action or failure to act as described in 24 C.F.R. §§ 982.552 and 982.553, including the grounds stated in § 982.552(c)(1)(i): "If the family violates any family obligations under the program (see § 982.551). See § 982.553 concerning denial or termination of assistance for crime by family members" and in § 982.553(b)(2) "if the PHA determines that any household member has violated the family's obligation under § 982.551 not to engage in violent criminal activity."

In the present case, Defendant's January 7, 2014 Proposed Termination Notice states that the HADC proposed to terminate Plaintiff's Voucher due to

3

the following purported violation: "4D-4: Engaged in drug-related or criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing the immediate vicinity of the premises." (Exhibit #1). Defendant does not specify the source of the section 4D-4 upon which it bases its proposed termination, but Plaintiff notes that the section is found in Mr. Carter's Voucher (Exhibit #2) and it echoes the language found in the relevant regulations described above.

As will be shown below, Plaintiff disputes Defendant's decision and factual conclusion. This case is in this Court because there is no HUD regulatory provision for administrative determination by an impartial fact finder.

## **PRELIMINARY   INJUNCTION   CRITERIA**

In deciding a Motion for Preliminary Injunction, the Court must determine (1) whether Plaintiffs are likely to succeed on the merits; (2) whether they are likely to suffer irreparable harm in the absence of the preliminary relief; (3) if the balance of hardships favors the Plaintiffs; and (4) whether the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008); Ingram v. Ault, 50 F.3d 898 (11th Cir.

1995). Plaintiff meets each of the four elements and should receive injunctive relief so he may continue to receive housing assistance and avoid the threat of homelessness.

## A.     The Likelihood that Plaintiff will Succeed on the Merits.

Plaintiff is likely to succeed on the merits as to the allegations that he was denied due process in the hearing that terminated his housing assistance for two reasons.

(1)     The evidence relied upon by the Hearing Officer to uphold the Voucher termination was, as a matter of law, legally insufficient to meet the Defendant's "burden of persuasion". 24 C.F.R. § 982.555(e)(6) and § 982.553(c); <u>Basco v. Machin</u>, 514 F.3d. 1177 (11th Cir. 2008).

(2)     Defendant's administrative decision does not meet the minimal due process requirements for explaining the basis of the decision. 24 C.F.R. § 982.555(e)(6).

1. **The evidence relied upon by the Hearing Officer to uphold the voucher termination was, as a matter of law, legally insufficient to meet the Defendant's "burden of persuasion."**

The Hearing Officer decided that the HADC could terminate Plaintiff's Section 8 Voucher because of Plaintiff's purported violation of his family obligations under the Section 8 Voucher Program (Exhibit # 3). The Hearing Officer provided no specific information to support her conclusion; she reached her conclusion by reliance upon hearsay evidence only.

The only persons present at the hearing were Ms. Waquelle Holley, Compliance Officer, Housing Choice Voucher Program; Ms. Turkia Nash, Administrative Hearing Officer; and Mr. Henry Carter. Although not specifically mentioned in the Hearing Officer's decision, Ms. Holley gave no testimony in which she claimed to have personal knowledge regarding the allegations made against Mr. Carter in the January 7, 2014 Proposed Termination Notice. Although also not specifically mentioned in the Hearing Officer's decision, the Hearing Officer likely based her decision solely on consideration of four documents provided at the hearing by Ms. Holley:

- A three-page copy of Internet search results from the screeningreports.com web site which, among other information, indicated there were two criminal cases pending against Mr. Carter;

- a single page copy of Criminal Case Search results from the DeKalb County Online Judicial System (OJS) web site which, among other information, indicated there were two criminal cases pending against Mr. Carter;

- a single page copy of Jail I.D. / Name Search results from the DeKalb County OJS web site which, among other information, indicated that Mr. Carter was arrested on October 31, 2013 and released on November 2, 2013; and

- a copy of a booking photo of Mr. Carter from the DeKalb County OJS web site.

These documents are unreliable hearsay and the Hearing Officer's reliance on them is improper. Additionally, the Hearing Officer's decision completely disregarded the live testimony of Plaintiff at the hearing. Mr. Carter stated that he was innocent of the criminal charges and was falsely accused because he did nothing wrong and did not commit the alleged crimes. The Hearing Officer's conclusion could have been reached only by improperly placing the burden of persuasion upon Plaintiff rather than on the Defendant.

Reliance on this type of unreliable hearsay in the face of sworn testimony that contradicts it has been repeatedly held to violate due process requirements. Basco v. Machin, 514 F. 3d 1177 (11th Cir. 2008) (holding that

7

two police reports were constitutionally inadequate to terminate assistance.); Ervin v. Hous. Auth. of the Birmingham Dist., 281 Fed. Appx. 938 (11th Cir. Ala. 2008) (Hearsay evidence from a witness and the housing authority's lawyer about information and a letter provide by police about the tenant, plus first hand testimony about a third party using drugs in front of the apartment was constitutionally inadequate to terminate assistance.); Lane v. Fort Walton Beach Hous. Auth., 518 Fed. Appx. 904, 911 (11th Cir. Fla. 2013) (Sex offender registry showed sex offender registered at address, plus evidence that the offender called the same day a deputy came to check on him at that address was constitutionally inadequate to terminate assistance). There was less evidence submitted in this case than in any of the cases where the Eleventh Circuit has already reversed Section 8 rent subsidy terminations. Mr. Carter's situation is analytically identical to these cases and Mr. Carter is certain to prevail on the merits of his claim.

  In Basco v. Machin, 514 F. 3d 1177 (11th Cir. 2008), the Court held that the PHA bears the burden of persuasion at an informal administrative hearing held to determine whether a Section 8 participant's rent subsidy should be terminated. To have ruled against Mr. Carter, the HADC must have

erroneously placed the burden of proof on him. This violates the holding of Basco.

Basco makes clear that evidence such as that submitted by the HADC cannot meet the burden of proof to terminate housing assistance. Basco, 514 F.3d at 1182, follows the analysis of J.A.M. Builder, Inc., v. Herman, 233 F.3d 1350, 1354 (11th Cir. 2000) in which the Court set forth the following factors to use to evaluate the probative value and reliability of hearsay. These factors are whether:

> (1) the out-of-court declarant was not biased and had no interest in the result of the case;
>
> (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant;
>
> (3) the information was not inconsistent on its face;
>
> (4) the information has been recognized by courts as inherently reliable.

Plaintiff submits that the PHA failed to address any of these required considerations and, therefore, failed to meet their burden of persuasion.

The documents relied upon by the HADC show only that Mr. Carter was arrested – nothing more. No evidence was presented to establish that Mr. Carter committed a crime.

The second factor listed above is even more crucial to the case at bar. Neither HUD Section 8 procedures, nor HADC procedures, provide participants with the right to subpoena witnesses. Plaintiff had no way of compelling those persons who initiated and carried out his arrest to appear at the hearing so that he could confront and cross-examine them. *See, also,* Richardson v. Perales, 402 U.S. 389, 407 (1971); McClees v. Sullivan, 879 F. 2d 451, 453 (8th Cir. 1989).

Defendant's decision to terminate Plaintiff's Section 8 rent subsidy, therefore, violates a well-established principle of due process guaranteed by the HUD Regulations and the Fourteenth Amendment's Due Process Clause.

The HADC's decision herein runs afoul of the Basco holdings.  The Basco court emphasized the fact that the right of cross-examination is especially important in benefit termination proceedings (*e.g.,* Basco at 1182, 1183), and that denial of the opportunity to confront and cross-examine witnesses who supply information upon which the housing authority relies is

fatal. Basco, 514 F.3d at 1183. This Court should find that Plaintiff herein is likely to prevail upon the merits of the same issue.

The third and fourth factors listed in the J.A.M. Builders case, *supra*, are essentially neutral and should not, in any event, outweigh the uncontroverted inability of Plaintiff to compel the presence of any of the out-of-court declarants who led to the creation of the documents upon which the Hearing Officer relied. Moreover, the Hearing Officer cited no reason to question the credibility of Plaintiff's testimony.

Given that the Hearing Officer was not lawfully entitled to rely upon the hearsay testimony, there was no other possible evidence presented by the Defendants to meet its "burden of persuasion" (sometimes called the "ultimate burden of proof"). In the words of the Basco court, the Defendants failed to establish their *prima facie* case to uphold the administrative decision to terminate Plaintiff's housing voucher.

Therefore, in this paradigm enunciated by the Basco court, Plaintiff was not required to present any evidence to have his voucher reinstated. Nonetheless, Plaintiff did testify that he was innocent of the alleged crimes

11

and there was no reason, let alone a lawfully stated reason, to discredit Plaintiff's said testimony.

**2.    Defendant Housing Authority's administrative decision does not meet the minimal due process requirements for explaining the basis of the decision.**

The Due Process Clause protects citizens from deprivations of life, liberty, or property without due process of law. U.S. Const. Amend. 14, § 1. This clause and applicable federal regulations require certain procedural safeguards in the conduct of grievance hearings. One of the required elements of due process is that the hearing officer must give a basic explanation for the decision. Goldberg v. Kelly, 397 U.S. 254, 271 (U.S. 1970).   "[T]he decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on. . ." Goldberg v. Kelly, 397 U.S. at 271.   This requirement of an understandable decision applies to housing subsidy cases.   In Lane v. Fort Walton Beach Hous. Auth., 518 Fed. Appx. 904, 906 (11th Cir. Fla. 2013) the Circuit Court noted that in an earlier decision in the case "The district court remanded the

Lanes' termination case to the agency so that the Hearing Officer could make an amended determination that would be consistent with the federal regulations. See 24 C.F.R. § 982.555(e)(6) ("The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.").   The Circuit Court also held that the Housing Authority's "failure to issue an adequately reasoned decision" supported the plaintiff's due process claim. Id. at 913.   See also Edgecomb v. Housing Auth., 824 F. Supp. 312, 316 (D. Conn. 1993) (holding that housing authority hearing officer's conclusory ruling was constitutionally inadequate).

The Hearing Officer's decision in Mr. Carter's case provides no analysis of the law and makes no statement of the evidence on which the decision is based and no legal conclusions based on that evidence. It simply affirms the decision to terminate Mr. Carter's Section 8 rent subsidy.

**B.   Irreparable Injury.**

Plaintiffs seeking preliminary relief must demonstrate that they are likely to suffer irreparable injury in the absence of an injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008); Los Angeles v. Lyons, 461 U.S. 95, 103, 103 S.Ct. 1660 (1983). Irreparable injuries are those that are

non-compensable or cannot be adequately compensated by money damages, such as emotional, psychological, and physical damage. Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983).

Plaintiff will suffer irreparable harm if this injunction is not granted. Since Defendant terminated Plaintiff's rent subsidy effective March 31, 2014, since Plaintiff's income is insufficient to pay rent at an unsubsidized dwelling, and since Plaintiff's April 2014 rent was due on April 1, 2014, Plaintiff will soon face eviction if this injunction is not granted.

Loss of subsidized housing is an irreparable injury for purposes of granting preliminary injunctive relief. Chastain v. Northwest Ga. Hous. Auth., 2011 U.S. Dist. LEXIS 135712, 33-34 (N.D. Ga. Apr. 28, 2011); Jackson v. Jacobs, 971 F. Supp. 560, 565 (N.D. Ga. 1997) ("Other courts have held that loss of subsidized housing constitutes 'irreparable injury' justifying injunctive relief."); *see also* Young v. Maryville Housing Auth., 2009 U.S. Dist. LEXIS 56539, 2009 WL 2043891, at *9 (E.D. Tenn. July 2, 2009) ("'[T]he threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunctive relief.'") (*quoting* McNeill v. New York City

Housing Auth., 719 F. Supp. 233, 254 (S.D.N.Y. 1989)); Bloodworth v. Oxford Village Townhouses, 377 F. Supp. 709, 719 (N.D. Ga. 1974) (effective increase of 50 percent in housing costs may be tantamount to eviction or may impose substantial financial hardships on family sufficient to constitute irreparable harm).

Plaintiff has shown the threat of irreparable injury.

**C.     Balance of Hardships.**

The balance of hardships strongly weighs in Mr. Carter's favor. The threat of irreparable harm to Plaintiff from the lack of injunctive relief outweighs any harm to Defendant that will result if the Court grants an injunction and Defendant continues to provide the assistance it has provided to Mr. Carter. "[T]he threat of eviction and the prospect of homelessness to [Plaintiff] outweighs the inconvenience and hardship to [Defendant]." McNeill, 719 F. Supp. at 255; *see also* Jackson, 971 F. Supp. at 565 ("It would be difficult to argue that the modest amount of money and administrative inconvenience a preliminary injunction would cost the Defendants outweighs the injury [the plaintiff] would suffer if she were compelled to remain

15

homeless."). *see also* <u>Chastain v. Northwest Ga. Hous. Auth.</u>, 2011 U.S. Dist. LEXIS 135712, 35-36 (N.D. Ga. Apr. 28, 2011).

No harm will be caused to Defendants or others by the issuance of this Order so the balance of hardships supports entry of a preliminary injunction.

**D.     The Public Interest.**

It is the policy of the United States to promote safe and sanitary housing for low-income individuals. 42 U.S.C. § 1437. Further, low-income housing assistance was created to aid in obtaining a decent home for low-income individuals and economically mixed housing. 42 U.S.C. § 1437(f). Low-income assistance by its very nature is to prevent homelessness and provide safe living conditions to individuals who cannot afford such housing.

The public interest will be served by the issuance of this Order because the public has an interest in the correct administration of the Section 8 program. The regulations regarding termination of Section 8 assistance should be construed such that Plaintiff's Voucher should not be terminated where he has not violated any requirement of his lease or the Section 8 program.

The public interest demands that low-income individuals not be subjected to a loss of housing assistance and a significant risk of homelessness without first being

given a meaningful opportunity to show that they are entitled to continue receiving those benefits. The issuance of a preliminary injunction will promote the public interest policy, as a preliminary injunction is necessary to correct the wrongdoing and violations of the HADC.

E.  **The Court Should Not Require a Bond.**

The Eleventh Circuit has held that a district court has discretion to waive the security requirement in appropriate cases. See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission, 425 F.3d 964, 971 (11th Cir. 2005). Given the high likelihood of success on the merits, Plaintiff's status as a recipient of public assistance, and that the injunction seeks merely to require Defendants to comply with federal law, no bond should be required.

F.  **Expedited Procedure is Necessary.**

This matter requires an expedited procedure because Mr. Carter is unable to pay market rate rent and is at serious risk of facing eviction proceedings. Without the relief sought in this motion, Mr. Carter has no way to pay his rent. For this reason, Mr. Carter asks the Court to schedule this matter for an immediate hearing pursuant to Local Rule 65.2, before the

17

expiration of the 14-day deadline for the Defendants to file a response to this Motion and the 20-day deadline for the Defendants to file an Answer to the Complaint.

## CONCLUSION

Since Plaintiff has met the four criteria for granting a preliminary injunction, Plaintiff respectfully requests that this Court grant his motion as set forth above.

Respectfully submitted,

/s/John R. Warchol
John R. Warchol
Georgia Bar No. 736630
*/s/*Charles R. Bliss
Charles R. Bliss
Georgia Bar No. 063385
Attorneys for Plaintiff

Atlanta Legal Aid Society, Inc.
151 Spring Street, N.W.
Atlanta, GA 30303

(404) 614-3921 (telephone)
(404) 614-3991 (facsimile)

jrwarchol@atlantalegalaid.org
crbliss@atlantalegalaid.org